Evan Goldstein (SBN 011866)
Goldstein Woods & Alagha
706 E Bell Rd., Ste. 200
Phoenix, AZ  85022
Telephone:  602.569.8200
Email: egoldstein@gwalawfirm.com

Sam Saks (SBN 024260)
Guidant Law
402 E Southern Avenue
Tempe, AZ 85282
Telephone: 602.888.0725
Email: sam@guidant.law

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Taylor Doyle,<br><br>   Plaintiff,<br><br>v.<br><br>Pekin Insurance Company,<br><br>   Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

COMPLAINT
**Error! Unknown document property name.**
116923768.2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    PARTIES ............................................................................................................ 2

III.   JURISDICTION AND VENUE ........................................................................... 2

IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW ....................................... 3

V.     PEKIN IMPROPERLY REFUSES TO DISCLOSE AND STACK  DOYLE'S
       COVERAGE ....................................................................................................... 5

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT) ................................... 12

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) .................................... 12

THIRD CLAIM FOR RELIEF (BAD FAITH) ................................................................ 13

PRAYER FOR RELIEF ................................................................................................ 15

# I.   INTRODUCTION

1.     Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims, unless the insurer employs one of two easy methods to avoid stacking – either (1) including a "statement" in the policy "inform[ing]" the insured of her "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of her "right to select one policy or coverage." A.R.S. § 20-259.01(H). Here, the insurer did neither.

2.     "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages can exist, and those coverage limits can be added together to provide "stacked" benefits for a single claim. In other words, each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3.     When an insured is injured, insurance companies have a duty to find coverage for the insured, to identify available coverages and limits, to inform the insured accurately about available coverages and benefits, to reasonably investigate the claim, to

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

construe the policy in accordance with known law, and not to misrepresent pertinent policy provisions or coverages.

4.     In handling UM/UIM claims for Plaintiff, Defendant Pekin Insurance Company ("Pekin") has breached all of these duties as well as the policy itself. Pekin applied just a single UM/UIM coverage limit to Plaintiff's claim even though Pekin neither inserted the statutorily-required "right to select" statement in its policy, nor advised Plaintiff of that right by letter. Pekin, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policy, but failed to do so. Having failed to utilize either anti-stacking option permitted by Arizona law and having failed to disclose the existence of stacked coverages Pekin breached its contractual and legal duties to Plaintiff and failed to adjust her claim properly.

5.     Plaintiff Taylor Doyle, an insured under Pekin policy number 005020575, brings this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding her rights under her Pekin auto insurance policy ("the Pekin Policy") and (b) state law based on diversity jurisdiction for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II.     PARTIES

6.     Plaintiff Taylor Doyle is a resident and citizen of Arizona.

7.     Defendant Pekin is an insurance company incorporated under the laws of Illinois, with its principal place of business in Illinois.

## III.     JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $50,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. Plaintiff is a citizen of Arizona, and Pekin is a citizen of Illinois (where it is incorporated and has its principal place of business).

9.    Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Pekin Policy was issued in this District.

10.    Whenever it is alleged in this Complaint that Pekin did any act or thing, it is meant that Pekin and its agents, officers, servants, employees or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of Pekin or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Pekin and its officers, agents, servants, employees or representatives. Specifically, Pekin is liable for the actions of its affiliates, officers, agents, servants, employees and representatives.

## IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW

11.    Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

12.    Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197, quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000).

13.    Subsection (H) of A.R.S. § 20-259.01 allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

14.    "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018).

15.    The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

16.    "Subsection (H) is not exclusively limited to circumstances where multiple policies exist—it applies to 'multiple policies or coverages.'" *Hoelbl v. GEICO*, No. 1 CA-CV 11-0703, 2012 WL 5589909 (Ariz. App. Nov. 15, 2012), *review denied* (Apr. 23, 2013); *see also GEICO v. Tucker*, 71 F. Supp. 3d 985 (D. Ariz. 2014) (following *Hoelbl*, and explaining that for applying subsection (H) "it did not matter if those multiple vehicles were covered by the same policy or separate policies.").

17.    Under Subsection (H), "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages).

18.    Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

19.    The contractual covenant of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[2]

## V.    PEKIN IMPROPERLY REFUSES TO DISCLOSE AND STACK DOYLE'S COVERAGE

20.    On September 27, 2020, at approximately 12:30 p.m., Joshua Pearson was driving a 2005 Honda Accord on Happy Valley Road westbound toward the I-17 in Phoenix. Mr. Pearson was driving at a high rate of speed. Instead of looking at the road, he was looking down.

21.    In front of Mr. Pearson, Plaintiff was operating her 2016 Kia Sorento, VIN 5XYPG4A53GG001952 ("the Sorento") on Happy Valley Road westbound toward the I-17 in Phoenix, Arizona when traffic in front of her began to slow.

22.    Plaintiff brought the Sorento to a complete and safe stop.

23.    After Plaintiff was stopped, Mr. Pearson rear-ended Plaintiff's vehicle.

24.    Mr. Pearson admitted he was looking down at the time of the accident and did not pay proper attention to the road or stop his vehicle to avoid the collision.

25.    Mr. Pearson was negligent in causing the accident, and he was the sole cause of the accident.

26.    The force of the impact was severe and caused significant injuries to Plaintiff.

27.    Plaintiff was wearing a seatbelt at the time of the accident.

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

28. Among other things, Plaintiff sustained or severely aggravated two herniated discs at C-5-6 and C6-7. To relieve her pain, Plaintiff needed several medical procedures, including epidurals and a nerve block.

29. Plaintiff is still in constant pain because of the injuries she sustained in the accident. Among other things, Plaintiff suffers from neck pain that radiates to her hands. She is not able to work out, run, or do the normal daily activities that she was accustomed to prior to the accident. Plaintiff also suffers from a reduced range of motion.

30. To date, Plaintiff has incurred over $223,537 in medical bills as a result of her injuries suffered in the accident.

31. At the time of the accident, Mr. Pearson was insured under an American Family Insurance auto policy with $50,000 in per-person bodily injury liability coverage. American Family Insurance tendered and Plaintiff accepted this policy limit.

32. Plaintiff's damages are significantly greater than $50,000.

33. Given the severity of Plaintiff's injuries from the accident, Mr. Pearson was underinsured as to Plaintiff. *See* A.R.S. § 20-259.01(G).

34. To protect herself and other insureds in the event a tortfeasor was uninsured or underinsured, Plaintiff purchased UIM insurance through Pekin. At the time of loss, Plaintiff was insured under a Pekin auto insurance policy (Copy of Policy No. 005020575, "the Pekin Policy," attached as Exhibit 1). The Pekin Policy insured two vehicles: the Sorento and a 2012 Nissan Frontier, VIN 1N6AD0ER6CC445262. Each vehicle's coverage provided Plaintiff with UIM benefits of $100,000 per person, $300,000 per accident.

35. Plaintiff's damages attributable to Mr. Pearson's fault exceed the combined amount of Mr. Pearson's bodily injury liability coverage and the stacked UIM coverages on the two vehicles insured under the Pekin Policy.

36.     In the Pekin Policy, Pekin agreed to pay as follows:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
>
> **1.**  Sustained by an "insured"; and
>
> **2.**  Caused by an accident.

37.     On August 27, 2021, Plaintiff, through her counsel, sent Pekin an email providing documentation of Plaintiff's UIM claim and damages, and stating in relevant part: "Please provide a copy of the dec page and please process the medpay claim and UIM claim." Exhibit 2.

38.     After follow-up emails, Pekin responded, in relevant part: "We'll start reviewing these." *Id.*

39.     After additional follow-up emails, on November 2, 2021, Pekin responded, in relevant part: "We are tendering our Underinsured Motorist Bodily Injury coverage of $100,000 for Taylor Doyle." *Id.*

40.     Plaintiff, through counsel, responded the same day, stating in relevant part: "Please tender the **applicable limits** to us . . ." *Id.* (emphasis added). No settlement agreement or release was presented or executed.

41.     Pekin tendered only $100,000. Thereafter, Plaintiff, through counsel, requested a certified copy of the Pekin policy, but Pekin only provided an uncertified copy. Pekin stated a certified copy was on order and would be sent.

42.     On February 23, 2022, Plaintiff, though counsel, sent an email to Pekin stating: "My client has two policies with UM/UIM coverage.  Please disclose available UM/UIM coverages and limits applicable to this incident." Exhibit 3.

43.     On February 28, 2022, Pekin responded, in relevant part: "We settled this UIM last year. Is there something else you need? If you have policy numbers to reference, I can look them up." *Id.*

COMPLAINT                                - 7 -
**ERROR! UNKNOWN DOCUMENT PROPERTY NAME.**
116923768.2

44.     After Plaintiff provided the Pekin policy number, on February 28, 2022, Pekin responded: "That is the same policy for this claim." *Id.*

45.     On February 28, 2022, Plaintiff, through counsel, followed up with Pekin stating: "Please confirm your position that there are no other UIM coverages or benefits available for this loss under this policy." *Id.*

46.     On February 28, 2022, Pekin responded, in relevant part: "That is correct." *Id.*

47.     The Pekin Policy under which Plaintiff was insured is Pekin's standard form Policy.

48.     The Pekin Policy fails to include a statement informing the insureds of their right to select one policy or coverage as applicable to any one accident.

49.     The Pekin Policy does not comply with A.R.S. § 20-259.01(H) because (a) it does not limit the UM/UIM coverage on each covered vehicle so that only one policy or coverage, selected by the insured, shall be applicable to any one accident, and (b) it does not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident. It merely states that the limit of liability for Underinsured Motorist Coverage is "shown in the Declarations":

**LIMIT OF LIABILITY**

**A.**  The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one

accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

50.     Similarly, the Declarations Page lists two separate policy limits and purports to prohibit stacking but fails to include language giving the policyholder the right to select one policy or coverage in accordance with Arizona law. It states, "The limit of liability applies separately for each vehicle. Where there are multiple vehicles on the policy, stacking of any limits of liability among the vehicles is not allowed":

| COVERAGES | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| The coverages listed below apply separately for each vehicle and are provided only where a premium or INCL (abbreviation for included) is shown. The limit of Liability applies separately for each vehicle. Where there are multiple vehicles on the policy, stacking of any limits of liability among the vehicles is not allowed. | | | | | | | | |
| VEH. | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | MEDICAL PAYMENTS | UNINSURED MOTORISTS | UNDERINSURED MOTORISTS | OTHER THAN COLLISION | COLLISION | UNIT PREMIUM |
| | EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | EACH ACCIDENT | EACH PERSON | EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | ACTUAL CASH VALUE (LESS DEDUCTIBLE SHOWN) | ACTUAL CASH VALUE (LESS DEDUCTIBLE SHOWN) | |
| POLICY LIMITS | 100/300 | 100,000 | 5,000 | 100/300 | 100/300 | | | |
| 001 | $201.00 | $146.00 | $24.00 | $11.00 | $70.00 | 1,000 DED $86.00 | 1,000 DED $159.00 | $697.00 |
| 002 | $217.00 | $166.00 | $27.00 | $22.00 | $79.00 | 1,000 DED $183.00 | 1,000 DED $221.00 | $915.00 |

51.     Pekin also did not, within thirty days of being notified of the accident at issue here, send any insured under the Policy, including Plaintiff, any written notice of their right to select one policy or coverage.

52.     As a general practice, Pekin does not advise its insureds in writing within 30 days after Pekin received notice of the accident, of their right to select one UM/UIM policy or coverage to apply to the accident under the Pekin Policy.

53.     These were simple options – informing the insureds of their rights in the policy itself or by written notice after the accidents – only one of which Pekin was required to take if it wanted to avoid stacking the UM/UIM coverages on the vehicles covered under the Pekin Policy.

54.     Pekin, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Pekin Policy.

55.     Pekin never disclosed or provided stacked UIM coverages to Plaintiff Doyle. Pekin, therefore, has denied Plaintiff Doyle benefits to which she is entitled under the Policy and Arizona law.

56.     As a general practice, Pekin does not disclose or provide stacked UM/UIM coverages to its insureds under the Pekin Policy after a covered accident.

57.     Pekin knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

58.     Pekin knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

59.     Pekin chose not to comply with those requirements.

60.     Many other Arizona auto insurers (e.g., Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply.[3] For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.

---

[3] See policy excerpts attached as Exhibit 4.

> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

61.     Other insurers (*e.g.*, Safeco) notify their insureds in writing of the right to select which policy or coverage will apply, by letter within 30 days after notice of an accident. *See* Exhibit **5** attached.

62.     Pekin knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

63.     Pekin chose not to follow those practices.

64.     Pekin failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under their Pekin Policy.

65.     On information and belief, Pekin willfully failed to investigate and inform itself and its insureds of Arizona law on stacked UM/UIM coverages, or alternatively, it disregarded legal advice it received.

66.     Pekin failed to pay Plaintiff stacked UM/UIM coverages to which she is entitled.

67.     Pekin and its agents failed to investigate, identify, acknowledge and disclose stacked UM/UIM coverages under the Pekin Policy, pursuant to the Arizona Administrative Code § 20-6-801(D)(1) and (D)(2).

68.     Pekin's failures are both unreasonable and in conflict with well-established Arizona law.

69.     Pekin's failures also violate its duty to find coverage, to conduct a reasonable investigation of the claim, and disclose and not to misrepresent pertinent policy provisions.

70.    Pekin's unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages has led to underpaying Plaintiff's UM and UIM claim, as well as the claims of many other Pekin insureds.

71.    Pekin also has a standard claim-handling practice of tendering undisputed UM or UIM payments subject to a release of claims. Pekin does so, despite knowing it cannot lawfully condition payment of undisputed policy benefits on the insured releasing claims. Any such release is void for lack of consideration and violation of A.R.S. § 20-259.01 and violated the implied covenant of good faith and fair dealing and Arizona statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2).

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

72.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

73.    Plaintiff has standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Pekin Policy under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Pekin's obligation to disclose the existence of stacked UM/UIM policies or coverages, and whether Plaintiff is entitled to stack UM/UIM policies or coverages for multiple insured vehicles.

74.    Under the circumstances, Plaintiff is entitled to a judicial declaration of her rights under the Pekin Policy, specifically that she is entitled to stack UM/UIM policies coverages for multiple insured vehicles under the Pekin Policy, and that Pekin was required to disclose the existence of stacked policies or coverages to her.

75.    This claim arises out of contract and Plaintiff therefore is entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

76.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

77.    The Pekin Policy formed a contract between Pekin and Plaintiff.

78.    Pekin breached the contract by failing to identify, acknowledge, disclose and pay the stacked UM/UIM limits of the Pekin Policy under Arizona law, despite Pekin's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

79.    Plaintiff has been and continues to be damaged by Pekin's breaches of contract.

80.    Plaintiff is not seeking a double recovery, but rather seeking stacked UM/UIM benefits to the extent of full compensation for her injuries. *Cf. State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 963 P.2d 334 (App. 1998) (insureds, who were paid their full damages under stacked State Farm UIM policies, were precluded from recovering duplicate damages under their other State Farm UIM policies).

81.    This claim arises out of contract and Plaintiff therefore is entitled to her attorney's fees under A.R.S. § 12-341.01.

### THIRD CLAIM FOR RELIEF
### (BAD FAITH)

82.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

83.    Inherent and implied in the Pekin Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

84.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors

could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. at 160, 726 P.2d at 576.

85.    The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy or policies and to do so in a way that is not misleading. *See, e.g., Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman,* 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

86.    Pekin acted objectively and subjectively unreasonably as to Plaintiff by failing to identify, acknowledge, disclose and pay benefits up to the stacked UM/UIM limits of the Pekin Policy.

87.    Pekin failed to identify, acknowledge and disclose stacked UM/UIM coverages under the Pekin Policy, pursuant to the Arizona Administrative Code § 20-6-801(D)(1) and (D)(2).

88.    Pekin failed to tender the stacked UM/UIM coverages under the Pekin Policy.

89. Pekin denied the existence of the stacked UM/UIM limits under the Pekin Policy, despite Pekin's failure to comply with A.R.S. § 20-259.01(H).

90. Pekin denied the existence of the stacked UM/UIM limits, despite the fact that it knew or should have known the Pekin Policy failed to comply with A.R.S. § 20-259.01(H).

91. Plaintiff has been and continues to be damaged by Pekin's breaches of the implied covenant of good faith and fair dealing, including breach of its obligations of investigation, disclosure, equal consideration, and indemnity.

92. Pekin's conduct was aggravated, outrageous and consciously disregarded and unjustifiably substantial risk of significant harm to Plaintiff. Pekin is, therefore, liable for punitive damages.

93. This claim arises out of contract and Plaintiff therefore is entitled to attorney's fees under A.R.S § 12-341.01.

94. Plaintiff demands a jury trial pursuant to Federal Rules of Civil Procedure 38.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for judgment against Pekin as follows:

A. A declaratory judgment that Plaintiff is entitled to stacked UM/UIM coverages under the Pekin Policy, and that Plaintiff is entitled to disclosure of the existence of stacked policies or coverages.

B. Compensatory damages in an amount to be proven at trial.

C. Punitive damages in an amount to be proven at trial.

D. Attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

E. For costs incurred herein.

F. Pre-judgment and post-judgment interest.

G. For any other relief permitted by Law.

1   DATED this _____ day of April, 2022.

2                                        GOLDSTEIN WOODS & ALAGHA

3                                        By *s/ Evan Goldstein*

4                                            Evan Goldstein
                                             706 E Bell Rd., Ste. 200
5                                            Phoenix, AZ 85022
                                             Telephone: 602.569.8200
6                                            Email: goldstein@gwalawfirm.com

7                                        GUIDANT LAW PLC

8                                        By *s/ Sam Saks*

9                                            Sam Saks
                                             402 E Southern Avenue
10                                           Tempe, AZ 85282
                                             Telephone: 602.888.0725
11                                           Email: sam@guidant.law

12                                           *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                          - 16 -
**ERROR! UNKNOWN DOCUMENT PROPERTY NAME.**
116923768.2