Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
Email: johnd@hbsslaw.com

Evan S. Goldstein (SBN 011866)
**GOLDSTEIN WOODS**
706 E Bell Rd., Ste. 200
Phoenix, AZ 85022
Telephone: 602.569.8200
Email: egoldstein@gwfirmaz.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Taylor Doyle, on behalf of herself and all others similarly situated, | Case No. 2:22-cv-00638-JJT |
| Plaintiff, | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS** |
| v. | |
| Pekin Insurance Company, | (Assigned to Honorable John J. Tuchi) |
| Defendant. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY ................................................................................. 1

    A.     Related Case History ................................................................................ 1

    B.     Present Case History and Mediation ...................................................... 4

III.   SUMMARY OF SETTLEMENT TERMS ......................................................... 6

    A.     The Settlement Class .............................................................................. 6

    B.     The Settlement Consideration, Release of Claims, and
          Anticipated Class Recovery ................................................................... 7

    C.     Attorneys' Fees and Costs, Incentive Award, and
          Administration Costs .............................................................................. 9

    D.     Notice and Implementation of Settlement ............................................ 12

    E.     Plan of Distribution ............................................................................. 13

IV.    ARGUMENT ...................................................................................................... 14

    A.     The Class should be certified for the purposes of settlement. .................... 14

          1.     The Settlement Class is sufficiently numerous. ............................ 14

          2.     Questions of law and fact are common to the
               settlement class ...................................................................... 15

          3.     Plaintiff's claim is typical of the Settlement Class's
               claims. .................................................................................. 16

          4.     Plaintiff and Class Counsel are adequate
               representatives. ....................................................................... 17

          5.     Common questions of law and fact predominate under
               Rule 23(b) ............................................................................. 18

    B.     The proposed settlement should be preliminarily approved. ..................... 21

          1.     The settlement is the result of arm's-length
               negotiations. ......................................................................... 22

MOTION FOR PRELIMINARY APPROVAL

2.     The settlement has no obvious deficiencies. ................................... 23

3.     The proposed settlement does not grant preferential treatment to Plaintiff or segments of the Settlement Class. ........................................................................................ 24

4.     The settlement falls within the range of possible approval. ....................................................................... 25

5.     The experience and views of counsel weigh in favor of preliminary approval. ................................................ 26

C.     The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e) ............................................... 26

D.     Proposed Schedule for Dissemination of Notice and Final Approval ....................................................................... 28

V.     CONCLUSION ................................................................... 29

MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013)..................................................................... 18, 19

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. 299 (N.D. Cal. 2018)........................................................ 25

*In re Apple Inc. Device Performance Litig.,*
No. 5:18-MD-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ................. 11

*In re Bluetooth Headset Prods. Liability Litig.*
654 F.3d 935 (9th Cir. 2011) ....................................................... 23, 24

*Brian Dorazio v. Allstate Fire and Casualty Insurance Co.,*
Case No. CV-23-00017-PHX-JJT (D. Ariz.).................................................. 2

*Brynley Wilhem v. Economy Premier Insurance Co.,*
Case No. CV-24-01270-PHX-MTL ........................................................ 2

*Bublitz v. E.I. du Pont de Nemours and Co.,*
202 F.R.D. 251 (S.D. Iowa 2001) ......................................................... 15

*Caballero v. Economy Preferred Insurance Co.,*
Case No. CV-22-02023-PHX-MTL (D. Ariz.)................................................. 2

*Caroline C. By & Through Carter v. Johnson,*
174 F.R.D. 452 (D. Neb. 1996) ........................................................... 15

*Charles Creasman v. Farmers Casualty Insurance Co.,*
Case No. CV-22-01820-PHX-MTL (D. Ariz.)................................................. 2

*Charles Miller v. Trumbull Insurance Company,*
Case No. CV-22-01545-PHX-JJT (D. Ariz.)................................................. 2

*Chase Whitehead v. Amica Mutual Insurance Co,*
Case No. CV-22-01978-PHX-DJH (D. Ariz.)................................................. 2

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ............................................................ 26

*Craig Hacker v. American Family Insurance Co.,*
Case No. CV-22-01926-PHX-DLR (D. Ariz.) ............................................... 2

iii

*Crystal Lopez v. Liberty Mutual Personal Insurance Co.*,
    Case No. CV-23-00629-PHX-DLR (D. Ariz.) ................................................................ 2

*Daniel Capane v. LM General Insurance Co., et al.*,
    Case No. CV-24-01095-PHX-SMB (D. Ariz.) .............................................................. 2

*Franklin v. CSAA Gen. Ins. Co.*,
    255 Ariz. 409, 532 P.3d 1145 (2023) ............................................................... 3, 4, 23

*Franklin v. CSAA Gen. Ins. Co.*,
    No. CV-22-00540-PHX-JJT, 2022 WL 16631090 (D. Ariz. Nov. 2,
    2022 .................................................................................................................................. 2

*Franklin v. CSAA General Insurance Co.*,
    No. CV-22-00540-PHX-JJT ................................................................................... *passim*

*Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*,
    No. CV-21-00442-PHX-SRB, 2021 WL 6805629 (D. Ariz. Oct. 19,
    2021) ................................................................................................................................. 1

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ....................................................................................... 19

*Jennifer Dale, et al. v. Travelers Property Casualty Insurance Co.*,
    Case No. CV-22-0659-PHX-SPL (D. Ariz.) ................................................................. 2

*Jodi Moshier v. Safeco Insurance Co. of America*,
    Case No. CV-23-00225-PHX-DLR (D. Ariz.) .............................................................. 2

*Julian v. Swift Transportation Co. Inc.*,
    No. CV-16-00576-PHX-ROS, 2020 WL 6063293 (D. Ariz. Oct. 14,
    2020) ............................................................................................................................... 11

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ..................................................................................... 20

*Kleiner v. First Nat. Bank of Atlanta*,
    102 F.R.D. 754 (N.D. Ga. 1983) ............................................................................ 12, 27

*Knapper v. Cox Commc'ns, Inc.*,
    329 F.R.D. 238 (D. Ariz. 2019) ................................................................................... 14

*Lisa A. Nutt v. Nationwide Insurance Company of America, et al.*,
    Case No. CV-24-02228-PHX-ROS ............................................................................... 2

*McClure v. State Farm Life Ins. Co.*,
    341 F.R.D. 242 (D. Ariz. 2022) ....................................................................... 16, 19, 21

iv

*Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Insurance Co.*,
    Case No. CV-22-01747-PHX-JAT (D. Ariz.) ................................................ 2

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................ 26

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir) ................................................ 19, 20

*In re Pharm. Indus. Average Wholesale Price Litigation*,
    582 F.3d 156 (1st Cir. 2009) ................................................ 20

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ................................................ 15

*Reid v. I.C. Sys. Inc.*,
    No. CV-12-02661-PHX-ROS, 2018 WL 11352039 (D. Ariz. July 27,
    2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) ................................................ 26

*Richard Luna v. Farmers Group Property and Casualty Insurance Co.*,
    Case No. CV-24-01267-PHX-MTL ................................................ 2

*Shirly Haenfler v. Safeco Insurance Co. of America*,
    Case No. 2:23-cv-00822-JJT ................................................ 2

*Sonoma Sol LLLP v. Truck Ins. Exch.*,
    No. CV-20-00069-PHX-DJH, 2021 WL 5238711 (D. Ariz. Nov. 9,
    2021) ................................................ 11, 24

*Stacey Trent v. Hartford Insurance Co. of the Southeast*,
    Case No. CV-23-02105-PHX-JJT (D. Ariz.) ................................................ 2

*In re Theranos, Inc. Litigation*,
    Case No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024) ................................................ 11

*Tinsley v. Faust*,
    No. CV-15-00185-PHX-ROS, 2020 WL 6048315 (D. Ariz. Oct. 13,
    2020) ................................................ 25

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................ 18, 19

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ................................................ 9, 10

*Winkler v. DTE, Inc.*,
    205 F.R.D. 235 (D. Ariz. 2001) ................................................ 14

MOTION FOR PRELIMINARY APPROVAL

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ................................................................. 15, 21

*Zwicky v. Diamond Resorts Inc.*,
No. CV-20-02322-PHX-DJH, 2024 WL 1717553 (D. Ariz. Apr. 22,
2024) ............................................................................................................ 10, 21

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
343 F.R.D. 101 (D. Ariz. 2022) ............................................................... *passim*

**Statutes**

A.R.S. § 20-259 ....................................................................................... *passim*

Class Action Fairness Act, 28 U.S.C. § 1711 ................................................. 12

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed.
2012) ................................................................................................................ 18

Arizona Rule of Civil Procedure 23 ................................................................ 5

Arizona Rules of Professional Conduct Rule 4.2 ........................................... 27

Federal Rule of Civil Procedure 23 ........................................................ *passim*

Federal Rule of Civil Procedure 30 ................................................................. 6

*Newberg on Class Actions* § 3:12 (5th ed.) ................................................... 14

## I.    INTRODUCTION

Plaintiff Taylor Doyle respectfully moves the Court to: (1) certify the Settlement Class; (2) appoint Plaintiff Taylor Doyle as the Class Representative for the Settlement Class; (3) appoint Robert Carey of Hagens Berman Sobol Shapiro, LLP as Lead Class Counsel for the Settlement Class; (4) preliminarily approve the class action settlement between Plaintiff and Defendant Pekin Insurance Company ("Defendant" or "Pekin");[1] and (5) direct notice to the Settlement Class. This Motion is based on Federal Rule of Civil Procedure 23, the supporting declarations, and the evidence and arguments presented in the briefs and at any hearing on this Motion to be set by the Court.

## II.    PROCEDURAL HISTORY

### A.    Related Case History

In October 2021, Judge Bolton ruled in favor of the insured plaintiffs in *Heaton v. Metropolitan Group Property & Casualty Co.*, holding that Arizona law required the insurer to stack uninsured motorist ("UM") and underinsured ("UIM") motorist coverages under multi-vehicle policies if the insurer fails to follow the requirements of A.R.S. § 20-259.01(H), in which case the insureds could collect the policy limits on each insured vehicle. No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. Oct. 19, 2021).

In April 2022, Class Counsel Hagens Berman filed *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT, alleging the same theory against CSAA. *Franklin* was one of sixteen cases filed by Class Counsel Hagens Berman and the Slavicek Law Firm (collectively "Class Counsel") in the 2022-2024 timeframe alleging this theory of liability. Those parallel suits were filed against Allstate, Liberty Mutual,

---

[1] The Settlement Agreement is attached as Exhibit 1. Plaintiff adopts and uses the definitions in the Settlement Agreement in this Motion.

Safeco, Travelers, American Family, Amica, Hartford, Trumbull, Farmers Insurance, Nationwide, and the Defendant here, Pekin.[2]

Class Counsel spent significant time and resources investigating the theory, legislative history, and industry information, as well as *Franklin* and the aforementioned related cases, all with the intention of coordinating litigation efforts across the cases. *See* Ex. 2, November 1, 2024 Declaration of Robert B. Carey ISO Mot. for Preliminary Approval ("Carey Decl.") ¶ 3.

*Franklin* became a standard-bearer for the parallel cases because it begat a Supreme Court ruling affecting all the others. Citing the multiplicity of pending suits that presented the same UM/UIM stacking question, This Court certified two questions to the Arizona Supreme Court in *Franklin*:

> (1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?

> (2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

---

[2] *Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Insurance Co.*, Case No. CV-22-01747-PHX-JAT (D. Ariz.); *Caballero v. Economy Preferred Insurance Co.*, Case No. CV-22-02023-PHX-MTL (D. Ariz.); *Brian Dorazio v. Allstate Fire and Casualty Insurance Co.*, Case No. CV-23-00017-PHX-JJT (D. Ariz.); *Shirly Haenfler v. Safeco Insurance Co. of America*, Case No. 2:23-cv-00822-JJT; *Crystal Lopez v. Liberty Mutual Personal Insurance Co.*, Case No. CV-23-00629-PHX-DLR (D. Ariz.); *Jodi Moshier v. Safeco Insurance Co. of America*, Case No. CV-23-00225-PHX-DLR (D. Ariz.); *Charles Miller v. Trumbull Insurance Company*, Case No. CV-22-01545-PHX-JJT (D. Ariz.); *Stacey Trent v. Hartford Insurance Co. of the Southeast*, Case No. CV-23-02105-PHX-JJT (D. Ariz.); *Craig Hacker v. American Family Insurance Co.*, Case No. CV-22-01926-PHX-DLR (D. Ariz.); *Charles Creasman v. Farmers Casualty Insurance Co.*, Case No. CV-22-01820-PHX-MTL (D. Ariz.); *Chase Whitehead v. Amica Mutual Insurance Co*, Case No. CV-22-01978-PHX-DJH (D. Ariz.); *Jennifer Dale, et al. v. Travelers Property Casualty Insurance Co.*, Case No. CV-22-0659-PHX-SPL (D. Ariz.). *Daniel Capane v. LM General Insurance Co., et al.*, Case No. CV-24-01095-PHX-SMB (D. Ariz.); *Brynley Wilhem v. Economy Premier Insurance Co.*, Case No. CV-24-01270-PHX-MTL; *Richard Luna v. Farmers Group Property and Casualty Insurance Co.*, Case No. CV-24-01267-PHX-MTL; and *Lisa A. Nutt v. Nationwide Insurance Company of America, et al.,* Case No. CV-24-02228-PHX-ROS.

MOTION FOR PRELIMINARY APPROVAL

1    2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022) ("This is the first-filed of eleven

2    known, present actions—four in the District Court and seven in Maricopa County

3    Superior Court—that turn on the resolution of the same question.").

4          On February 21, 2023, Class Counsel Hagens Berman filed Franklin's

5    Supplemental Brief Regarding Certified Questions with the Arizona Supreme Court.

6    Carey Decl. ¶ 4. The defendant in *Franklin* also filed a supplemental brief that same day.

7    *Id.* ¶ 5. In response to that briefing, four insurance companies and two insurance groups

8    filed a total of five amicus briefs in support of CSAA, totaling seventy-four pages of

9    briefing. *Id.* ¶ 6. Class Counsel Hagens Berman filed a combined response to all five

10   amicus briefs, which consisted of thirty-eight pages of additional briefing. *Id.* ¶ 7. Class

11   Counsel at the Slavicek Law Firm, on behalf of separate multiple represented plaintiffs,

12   filed a separate amicus brief. *Id.* ¶ 8. The Arizona Supreme Court held oral argument on

13   the certified questions on April 18, 2023. *Id.* ¶ 9. John DeStefano of Hagens Berman

14   argued those certified questions before the court. *Id.* ¶ 10.

15         On July 28, 2023, the Arizona Supreme Court answered the certified questions in

16   favor of plaintiff:

17              We hold that § 20-259.01 mandates that a single policy
18              insuring multiple vehicles provides different UIM coverages
                for each vehicle. Notwithstanding creative policy drafting
19              intended to evade statutory requirements—including technical
                definitions of coverages and extensive limitation of liability
20              clauses—insurers seeking to prevent insureds from stacking
                UIM coverages under a single, multi-vehicle policy must
21              employ subsection (H)'s sole prescribed method for limiting
                stacking. We also hold that § 20-259.01(B), by its plain
22              language and non-stacking function, does not bar an insured
                from receiving UIM coverage from the policy in an amount
23              greater than the bodily injury or death liability limits of the
24              policy.

25   *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 532 P.3d 1145, 1146–47 (2023). The

26   court explained that although the text of A.R.S. § 20-259.01 is "ambiguous, . . . the

27   statute's history and purpose clearly indicate that multi-vehicle policies provide separate

28

3

UIM coverages for each vehicle." *Id.* at 1148. The court went even further than the certified questions to find that subsection (H) provides "the sole means by which insurers may limit UIM/UM stacking" and "to limit stacking under subsection (H), insurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148, 1151 (quoting A.R.S. § 20-259.01(H)). The court concluded:

> In answering the certified questions, we hold that (1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Id.* at 1153.

## B. Present Case History and Mediation

On April 18, 2022—while *Franklin* was pending but before this Court certified questions to the Arizona Supreme Court—Plaintiff Taylor Doyle filed this case in this district. ECF No. 1-3. On April 21, 2022, Plaintiff filed her First Amended Class Action Complaint. ECF No. 12. Like the plaintiff in *Franklin*, Doyle's claims relate to stacking UM and UIM coverage. More specifically, Doyle alleges that she was injured in a collision on September 27, 2020, that her injuries led to medical expenses in excess of $50,000, and that the non-party at fault was underinsured. ECF No. 36 ¶¶ 20-35. At the time of the collision, Doyle was an insured under a Pekin policy insuring two vehicles, with UM coverage of $100,000 per person and an aggregate limit of $300,000 per collision. *Id.* ¶ 34. On August 27, 2024, Plaintiff submitted a claim to Pekin for UIM benefits on the Pekin policy. *Id.* ¶ 37. Pekin paid Doyle $100,000—the policy limits on coverage under one of the vehicles—but did not pay any claims for coverage on the other

three vehicles. *Id.* ¶¶ 39-41. Doyle alleges that Pekin failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 49-52. Specifically, Doyle alleges that the limitation-of-liability policy language did not inform her that coverage could not be stacked or of her right to select which coverage would apply. *Id.* ¶¶ 48-49. Doyle also alleges that within 30 days of receiving notice of the collision, Pekin did not provide her written notice of her right to select which coverage would apply. *Id.* ¶ 52. Doyle alleges because Pekin did not inform her of her right to select which coverage would apply, she was entitled to stack coverage for both vehicles. *Id.* ¶ 55.

Doyle brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing, seeking declaratory relief, direct and consequential damages, and punitive damages. *Id.* ¶¶ 83-112. Doyle also sought to certify two classes of similarly situated individuals under Arizona Rule of Civil Procedure 23(b)(2) and (b)(3): (1) Pekin's insureds with UM claims under an Arizona policy that insured more than one vehicle who were paid the UM policy limits on one vehicle on the policy, but where Pekin either failed or refused to pay UM benefits on any other vehicles on the policy; and (2) Pekin's insureds with UIM claims under an Arizona policy that insured more than one vehicle who were paid the UIM policy limits on one vehicle on the policy, but where Pekin either failed or refused to pay UIM benefits on any other vehicles on the policy. *Id.* ¶¶ 71-82.

On May 31, 2022, Pekin filed its Answer to the First Amended Class Action Complaint. ECF No. 16. In its Answer, Pekin denied that it was required to pay Plaintiff or members of the putative class stacked UM/UIM coverage. ECF No. 16. On November 15, 2023, Pekin filed its Answer to Plaintiff's Second Amended Complaint. ECF No. 56. There, Pekin again denied it was required to pay Plaintiff, or the putative class stacked benefits. *Id.*

After holding a status conference, the Court stayed the matter pending the Arizona Supreme Court's decision in *Franklin*. ECF No. 20. After being notified of the *Franklin* decision, the Court lifted the stay and the parties commenced discovery. ECF No. 44.

The parties engaged in significant discovery. In total, Plaintiff issued forty-nine requests for production, twenty-one interrogatories to Pekin, and nine requests for admission. Carey Decl. ¶ 11. As part of this discovery, Pekin produced hundreds of documents including policy forms, claims handling practices and procedures, internal correspondence regarding compliance, and claim file documents—which Plaintiff has reviewed. *Id.* ¶ 12. Plaintiff also issued a Rule 30(b)(6) deposition notice and deposed two corporate witnesses for Pekin on topics ranging across Pekin's claims handling practices, its policy language, its understanding of the duties of insurers in Arizona, and the structure and availability of insurance claim-related data maintained by Pekin in the ordinary course of its insurance business. *Id.* ¶ 13. Plaintiff also deposed Pekin' s claim adjuster who handled evaluation and payment for Plaintiff's UM/UIM claim. *Id.* ¶ 14. Pekin produced extensive data regarding the claims of putative class members and claim payments in other UM/UIM and bodily injury claims. *Id.* ¶ 15. Plaintiff's counsel and her damages expert reviewed and developed a damages model from this data. *Id.* ¶ 16.

On September 12, 2024, the parties participated in a full day of settlement discussions with the assistance of respected mediator Michael N. Ungar. *Id.* ¶ 17. Over the following weeks, the parties continued negotiating and on September 23, 2024, the parties were able to agree on the key terms of a settlement. *Id.* ¶ 18. The parties filed a Joint Notice of Settlement on September 23, 2024. ECF No. 95. The parties then entered into the final Settlement Agreement on October 31, 2024, agreeing to settle the case for $12,450,000.00, attached as Exhibit 1.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement Class

The settlement encompasses the proposed "Settlement Class," which the parties agree includes:

> All persons identified in Exhibit A to the Settlement Agreement and who do not timely elect to be excluded from the Settlement Class, which roughly includes all persons (a) insured under a policy issued by Defendant in Arizona that contained the UM Endorsement or UIM Endorsement and provided UM Coverage or

MOTION FOR PRELIMINARY APPROVAL

UIM Coverage for more than one motor vehicle; (b) who made a
claim for UM Coverage or UIM Coverage during the Class Period;
and (c) who (i) received a claim payment equal to the limit of
liability for the UM or UIM benefits for one vehicle, or (ii) who
were one of multiple claimants in a claim related to a single
incident, where the aggregate total paid on the claim was equal to
the per incident limit of liability for the UM Coverage or UIM
Coverage for one vehicle.

Ex. 1, Settlement Agreement ¶ 24 & Ex. A thereto. Each "Settlement Class Member" is

identified on Exhibit A, which includes all known persons who fall within the definition

of the Settlement Class. *Id.* ¶ 25. The parties agreed to a defined universe for the Class.

Carey Decl. ¶ 19. This eliminates the risk of any insured who is not identified

inadvertently having their claim released through this settlement. *Id.* ¶ 20. This settlement

resolves the claims of what is understood to be the complete universe of those who could

bring a stacking claim, so the release and payments due are limited to those insureds

known to the parties. *Id.*

**B.    The Settlement Consideration, Release of Claims, and Anticipated Class Recovery**

The Settlement releases Defendant Pekin from all claims for those Class Members

identified in Exhibit A, based on the facts alleged in the Complaint in exchange for a

common fund of $12,450,000.00, less any reduction for exclusions as described below

(the "Settlement Fund").[3] Settlement Agreement ¶¶ 39–42.

Class Counsel have developed extensive statistical evidence and other proof

confirming that this settlement amount is fair, reasonable, and adequate in relation to the

projected value of the insurance claims themselves. Carey Decl. ¶ 21. Class Counsel will

submit more detailed proof during the final approval process but using a conservative

methodology—calculating the conditional mean based on claims that exceed the single

policy limit and adjusting the conditional mean based on the stacked policy limit—

Plaintiff's statistics expert estimates that the model's low range would be $8,678,957. *Id.*

---

[3] The claims released include breach of contract and breach of the covenant of good
faith and fair dealing.

While higher ranges could be accepted, this figure is within Plaintiff's expected damages and supports the fairness of the settlement. *Id.* To evaluate damages, Class Counsel, with the assistance of experts, estimated counterfactual settlement payments using various statistical models including models based on Kaplan–Meier statistical techniques, two variations of Weibull data, log-rank analysis, curve analysis and maximum likelihood estimation of censored claim data. *Id.* ¶ 22. This evaluation shows that there is a strong relationship between unpaid loss and the available insurance funds. *Id.* ¶ 23. This relationship does vary by claim time and individual insurance limit: Loss ranges between 10-80% of available incremental insurance limits, depending on claim type and coverage limits. *Id.* This $8,678,957 valuation means the Class is getting approximately 143% of the benefits they would have received had their claims been adjusted under the stacked policy limits at the time of their losses, instead of being capped by the single limit and ignoring for the moment the value of the other claims released. *Id.*

In making this settlement, Class Counsel considered the risks of going to trial including the possibility that a trial could result in a smaller or zero recovery for the Settlement Class, the time and resources that would be expended by both parties and the Court, and the possibility of delay caused by any appeal if Plaintiff did prevail. And while Plaintiff may have recovered more at trial, there is always a risk of losing at trial (even with a meritorious case) for any number of reasons. *Id.* ¶ 24. There are also risks relating to admissibility of evidence and class certification. *Id.* Awards of interest and punitive damages are at the jury's discretion, as is the amount of compensatory damages awarded, even if the proof is compelling. If Plaintiff prevails at trial, the delay and other financial risks of an appeal are still considerable, and appeals are commonplace in insurance cases. *Id.* Finally, early resolution of this case avoids significant litigation costs and expert fees, greater attorneys' fees, and further loss of the time value of money on any recovery. *Id.*

MOTION FOR PRELIMINARY APPROVAL

**C.     Attorneys' Fees and Costs, Incentive Award, and Administration Costs**

Because this is a common fund settlement, the costs of notice and distribution, attorneys' fees and costs, and the service award for the Class Representative will be paid out of the Settlement Fund. Class Counsel estimates the costs of notice and distribution to be approximately $18,000. Carey Decl. ¶ 25. Through October 31, 2024, Class Counsel has advanced costs of $12,194.86. *Id*. Class Counsel will request a fee award of up to 30% of the total Settlement Fund. *Id.*

When awarding fees under a common fund in the Ninth Circuit, courts generally start with the 25% benchmark and adjust upward or downward depending on:

(1)     The extent to which class counsel achieved exceptional results for the class;

(2)     Whether the case was risky for class counsel;

(3)     Whether counsel's performance generated benefits beyond the cash fund;

(4)     The market rate for the particular field of law (in some circumstances);

(5)     The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and

(6)     Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Class Counsel's work and success in this case merits an upward adjustment of 5%, for a total fee of 30%. Private counsel entering into a contingent fee agreement for these types of cases (breach of contract and insurance bad faith in the context of an automobile injury) routinely request and receive (as expert testimony will show) a fee of 40% of the gross recovery achieved. Class Counsel's skill and effort, not only in this novel and risky case but also in *Franklin*, produced an extraordinary result. The *Franklin* decision confirmed that multiple coverages existed and could be stacked under a single insurance policy insuring multiple vehicles—the threshold issue in this case. Beyond this, Class Counsel's skill and expertise in developing the law, evidence, and analysis to secure class certification made this

MOTION FOR PRELIMINARY APPROVAL

settlement possible. The settlement permits every class member to receive a significant recovery without even knowing about the harm to their interests or having to retain private counsel and engage in a one-sided battle with their own insurer. Class Members will pay less than the established rate for a recovery devoid of the friction and unpleasantness that can accompany litigation. Class Counsel will more fully support their request, including detailing the relevant circumstances of the *Wells Fargo* factors, in their motion for attorneys' fees.

In moving for attorneys' fees, there will be a single fee request made in this case by Class Counsel and its team that worked on the case—there will not be multiple or competing fee requests that would require the assistance of a fee committee or special master. Moreover, the common fund payment is a discrete, negotiated cash benefit that is easily ascertained. Class Members will have ample information about the fee request and benefits produced by the efforts of counsel, as Plaintiff's proposed Notice includes the amount of fees and maximum amount of costs Class Counsel will seek as well as the total recovery. Under Plaintiff's proposed schedule, the fee motion will be filed thirty days before the objection deadline and may be requested from Class Counsel for the Class Members to review. Given the known market for attorney's fees in relation to the recovery obtained for UM/UIM claims, class members have solid insights into what a reasonable fee is in the circumstances.

Given the nature of this case and the desire to be efficient while affording sufficient information to ascertain the appropriateness of a fee award, the optional procedures set forth in LRCiv 54.2(j) are seemingly unnecessary here. With the Court's permission, Plaintiff proposes to substantiate counsel's work for the class using task- and counsel-based time records as is typical for cross-check purposes in common fund cases. "[T]he district court need not inquire into the reasonableness of fees with the same level of scrutiny as when the amount of fees is litigated." *Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 2024 WL 1717553, at *5 (D. Ariz. Apr. 22, 2024) (*quoting Wood v. Ionatron, Inc.*, 2024 U.S. Dist. LEXIS 67102, 2009 WL 10673479, at *5 (D.

MOTION FOR PRELIMINARY APPROVAL

Ariz. Sept. 28, 2009) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003)). The purpose of the percentage-of-the-fund method is to reduce "the burden on the courts that a complex lodestar calculation requires," and instead allows courts "to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (citations omitted). As the percentage-of-the-fund is appropriate in this case, and the Court only need perform a lodestar crosscheck, detailed billing records would increase the time expended without improving the ability to assess the proper percentage. Plaintiff will provide for each attorney who worked on the case both summaries of the general tasks performed and the amount of time each attorney billed, consistent with recent class settlements in this District and Circuit.[4] Plaintiff will also provide a breakdown of all the task codes used in this case, identifying the number of hours spent on each task code. This will allow the Court to easily and accurately perform the lodestar cross check without burdening the Court or Class Counsel with unnecessary time and expense. *Id.* at *2 (noting that the percentage-of-the-fund method reduces "the burden on the courts that a complex lodestar calculation requires").

For a service award, Class Counsel will also seek an award of $7,500 for Plaintiff Taylor Doyle out of the Settlement Fund. "In the Ninth Circuit, an incentive award of $5,000 is 'presumptively reasonable,'" and may be adjusted up or down depending on effort. *Sonoma Sol LLLP v. Truck Ins. Exch.*, No. CV-20-00069-PHX-DJH, 2021 WL 5238711, at *6 (D. Ariz. Nov. 9, 2021) (citations omitted). Here, a slightly higher award is reasonable. Doyle has been actively involved in this litigation and without her willingness to come forward and prosecute the action, the Settlement Class Members would have received nothing for their injuries. Plaintiff spent significant time assisting Class Counsel in investigating and prosecuting this action. Carey Decl. ¶ 26. Plaintiff

---

[4] *In re Theranos, Inc. Litigation*, Case No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024) (approving fee award, including Hagens Berman's and Mr. Carey's fees).

MOTION FOR PRELIMINARY APPROVAL

assisted with drafting her factual allegations in the Complaint and was involved in the settlement process. *Id.* Given Ms. Doyle's efforts and the significant amount the Class Members will receive, an award of $7,500 is reasonable. *See Julian v. Swift Transportation Co. Inc.*, No. CV-16-00576-PHX-ROS, 2020 WL 6063293, at *3 (D. Ariz. Oct. 14, 2020) (finding award of $15,000 reasonable where plaintiff traveled to Phoenix for his deposition and in light of amount other class members would receive). Class Counsel will more fully support this request in their motion for attorneys' fees.

**D.    Notice and Implementation of Settlement.**

Plaintiff has attached a proposed Settlement Class Notice and proposes the following plan for the dissemination of that Notice. Ex. 3, Proposed Notice. Plaintiff proposes notifying the Settlement Class, which consists of ninety-four Settlement Class Members, via first class U.S. mail. For Settlement Class Members whose addresses are unavailable, notice shall be sent by email. Settlement Agreement ¶ 33. Plaintiff proposes using Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator. *Id.* ¶ 20.

Pekin will provide to Epiq and Class Counsel the names, addresses, email addresses, and phone numbers for all members of the Settlement Class. *Id.* ¶ 52. Using that data, Epiq will mail the Notice form to all settlement Class Members. *Id.* ¶ 54. With the Court's approval, Class Counsel will also contact the Settlement Class Members to provide information or answer questions that will aid "prospective class members in deciding whether or not to join the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983). Additional details on the notice plan are set forth in Section C below.

Notice is also required under the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* That notice will be provided to the appropriate state and federal officials no later than ten days after the filing of this Motion. The cost of notice will be paid out of the Settlement Fund, which amount is included in the estimated costs of administration above.

**E.      Plan of Distribution**

Plaintiff proposes sending checks to every member of the Settlement Class, with the "Net Settlement Fund" (the Settlement Fund less attorneys' fees, costs, and any incentive award) being distributed among the Settlement Class in accordance with the allocated percentages as described in the Settlement Agreement. Settlement Agreement ¶ 46 & Ex. A. Class Counsel, in consultation with experts, has calculated an "Initial Allocation" for each of Settlement Class Members.[5] *Id.* ¶ 46 & Ex A. The Initial Allocation is based on the relative valuation of each Settlement Class Member's damages, an assessment of economic losses, the statistical estimate taking into account the time of loss and limits of the respective policies, as well as payments already received by the Settlement Class Members. Carey Decl. ¶ 27.

After the deadline for Class Members to request exclusion has passed and the exclusions are known, the Settlement Fund will be reduced for each Class Member who has requested exclusion, by the percentages of their Initial allocation. Settlement Agreement ¶ 63. Class Counsel will proportionally recalculate the percentage allocation of the Net Settlement Fund for the remaining Settlement Class Members, to reflect the reduction in the number of Settlement Class Members and reduced Settlement Fund. *Id.* ¶ 45. Class Counsel will attach that "Final Allocation" to the Motion for Final Approval, which will represent each Settlement Class Member's share of the Net Settlement Fund. *Id.*

After the Settlement receives Final Approval, Epiq will mail checks via U.S. Mail to each of the Settlement Class Members, in the proportions set forth in the Final Allocation. *Id.* ¶ 46. If there are unclaimed funds, the parties agree to meet and confer on whether to do a second distribution to the Settlement Class or to distribute those funds to a *cy pres* recipient. *Id.* ¶ 49. The parties also agree to meet and confer on the identity of

---

[5] Ex. A to the Settlement Agreement sets forth the proposed Initial Allocation Each Class Member will also be informed of their projected claim value in the Notice. Proposed Notice ¶ 10.

MOTION FOR PRELIMINARY APPROVAL

the *cy pres* recipient. *Id*. Any proposed subsequent distribution, either to the Settlement Class or to a *cy pres* recipient, will then be submitted to the Court for approval. *Id.* The Parties agreed in the Settlement Agreement that there will be no reversion of unclaimed funds to Pekin. *Id.*

## IV.    ARGUMENT

"The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions." *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 112 (D. Ariz. 2022) (citing cases). Where parties reach settlement before class certification, courts must approve both the fairness of the settlement and the "propriety of certification." *Id.* Here, the Settlement Class should be certified under Federal Rule of Civil Procedure 23(b)(3) and the settlement is "fair, reasonable, and adequate" under Rule 23(e).

**A.    The Class should be certified for the purposes of settlement.**

"A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure ("Rule") 23(a) and additionally fits within one of the three subdivisions of Rule 23(b)." *Zwicky*, 343 F.R.D. at 113. Rule 23(a) requires the Court to examine whether: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the class. Fed. R. Civ. P. 23(a)(1)-(4). Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Plaintiff can show that the Settlement Class meets the requirements of Rules 23(a) and (b)(3) and should be certified for the purpose of settlement.

**1.    The Settlement Class is sufficiently numerous.**

While this class only has ninety-four members, it meets the numerosity standard. Numerosity is not "tied to any fixed numerical threshold." *Zwicky*, 343 F.R.D. at 114; *see also Newberg on Class Actions* § 3:12 (5th ed.); *Winkler v. DTE, Inc.*, 205 F.R.D. 235,

239 (D. Ariz. 2001). "[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019). Plaintiff satisfies the numerosity requirement under Rule 23(a)(1) because the proposed class includes at least ninety-four members, and because joinder of these class members is "impractical" as required by Fed. R. Civ. P. 23(a)(1).

Beyond the wasteful inefficiency of joining ninety-four individuals in a single action, joinder is impracticable because the individual claimants have no practical means to pursue separate suits. Pekin's corporate representative and adjuster testified that there has been no effort to notify them of underpayments. *See Caroline C. By & Through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) ("Potential lack of knowledge and sophistication of the class members place them in a poor position to seek legal redress individually."). Further, "courts have relaxed the numerosity requirement" where parties seek certification under Rule 23(b)(2), as Plaintiff does here. *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251, 255–56 (S.D. Iowa 2001). All of the above factors demonstrate that numerosity is met. *See Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2010) ("The district court likewise did not abuse its discretion in determining that the class of 20 satisfies the numerosity requirement.").

### 2. Questions of law and fact are common to the settlement class.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality exists where class members' 'situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (citation omitted). "Because the Ninth Circuit construes commonality liberally, it is not necessary that all questions of law and fact be common. The commonality requirement is met when the common questions it has raised are apt to drive the resolution of the litigation." *Zwicky*, 343 F.R.D. at 114 (internal quotation, alteration, and citations omitted).

Commonality is satisfied here. Similar factual allegations apply to each of the proposed Settlement Class Members. Plaintiff alleges that all Settlement Class Members purchased a Pekin policy in Arizona that included multi-vehicle UM/UIM coverage and the same or substantially same limitation-of-liability policy language. Plaintiff further alleges that each Settlement Class Member requested UM/UIM coverage from Pekin but only received the policy limit for one covered vehicle. Plaintiff also alleges that Pekin did not provide the required notice under A.R.S. § 20-259.01(H) to the Settlement Class Members, either through the policy language or by separate written notice.

Plaintiff's causes of action are also identical for the Settlement Class. Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing all ask the same question: Whether Pekin breached its contracts with the Settlement Class when it failed to provide the Settlement Class Members with stacked coverage, after not providing the notice required by A.R.S. § 20-259(H) either in the policy or by separate letter. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz. 2022) ("Plaintiff has satisfied the commonality requirement because each claim is based on a form contract and a uniform course of conduct towards each policyholder by State Farm."). And, as the insurance policies were all issued in Arizona, Arizona law controls and applies to each member of the Settlement Class. Commonality is met in this case.

### 3. Plaintiff's claim is typical of the Settlement Class's claims.

"Typicality requires that the named plaintiff have claims 'reasonably coextensive with those of absent class members,' but the claims do not have to be 'substantially identical.'" *Zwicky*, 343 F.R.D. at 115 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test for typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff has no individual claims that differ from the Settlement Class's claims. Plaintiff had a Pekin policy that provided UM/UIM coverage on more than one vehicle, she requested UIM coverage from Pekin that exceeded the limit of UIM coverage on one vehicle, she alleges Pekin did not provide her the required statutory notice to prevent stacking and allow her to choose UIM coverage, and she only received payment in the amount of the single (one-vehicle) UIM limit. Like Plaintiff, all Settlement Class Members had a Pekin policy that provided UM/UIM coverage for more than one vehicle, they requested UM/UIM coverage from Pekin, Pekin allegedly did not provide them the required statutory notice to prevent stacking and allow them to choose their UM/UIM coverage, and they only received UM/UIM coverage for one vehicle. Plaintiff's claims all sound in contract and bad faith, alleging that Pekin breached its contractual obligations and the duty of good faith by not paying for additional UM/UIM coverage. The Settlement Class Members have breach of contract and bad faith claims that are identical to those of Plaintiff. Plaintiff meets the typicality requirement.

### 4.    Plaintiff and Class Counsel are adequate representatives.

"To resolve the question of legal adequacy, the Court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class?" *Zwicky*, 343 F.R.D. at 116 (citing *Hanlon*, 150 F.3d at 1020). "This adequacy inquiry considers a number of factors, including 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Id.* (citing *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Id.* (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

There are no conflicts of interest between Plaintiff and Class Counsel and the Settlement Class. As shown above, commonality and typicality are met, showing there

are no conflicts between Plaintiff and the Settlement Class. *See Zwicky*, 343 F.R.D. at 116 (finding no conflict where commonality and typicality are met). And Class Counsel has no conflict with the Settlement Class, having litigated this case and related cases, including *Franklin*, which yielded a favorable decision for Arizona insureds.

"The second prong of the adequacy inquiry examines the vigor with which Plaintiffs and their counsel have pursued the common claims*." Zwicky*, 343 F.R.D. at 116. Here, Plaintiff has fulfilled her duties as a class representative, assisting with the litigation when asked. Hagens Berman Sobol Shapiro LLP is adequate counsel. Hagens Berman has extensive experience in complex and class-action litigation, including insurance litigation. Ex. 4, Hagens Berman Firm Resume. And it has adequately litigated this case, getting a favorable decision in *Franklin*, which has benefited the Settlement Class Members here. Adequacy is met.

### 5. Common questions of law and fact predominate under Rule 23(b).

A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Zwicky*, 343 F.R.D. at 117 (quoting Fed. R. Civ. P. 23(b)(3)). This case meets both the predominance and superiority requirements needed for class certification.

### a. Common questions predominate in this case.

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." *Zwicky*, 343 F.R.D. at 117. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)); *see also Amgen Inc. v.*

*Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (when an issue in the case can be proven through evidence common to the class, it is a "'common questio[n]' for purposes of Rule 23(b)(3)"). Here individual issues do not outweigh common issues. As established above, the facts and legal issues are common to the class. Plaintiff contends liability can be established by the policy forms and standardized letters; and where there is a form insurance contract with common treatment of the class members, predominance is typically met. *See McClure*, 341 F.R.D. at 252 (finding predominance in breach-of-contract claim against insurance company, noting a "claim for breach of a standard form contract or company policy often may be suitable for class-wide treatment" (quoting *Garza v. Gama*, 379 P.3d 1004, 1007 (Ariz. Ct. App. 2016))). Thus, the only question is whether there any individual issues outweigh these common issues.

As *Amgen* correctly notes, when the proof is common, individualized issues do not predominate because the result is simply that, if the class fails in its proof, its claim will fail and "there will be no remaining individual questions to adjudicate." *Amgen*, 568 U.S. at 469. Here, if the case was litigated, Plaintiff contends liability and causation would be established by each class member using the same evidence, rendering it suitable for class treatment and leaving the merits determination for the factfinder.

Moreover, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods,* 577 U.S. at 453 (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778 at 123–24 (3d ed. 2005)). In settlement classes, whether a class is sufficiently cohesive to satisfy predominance "is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). The result is that, in settlements such as this, "the district court need not consider trial manageability issues." *Id.* at 563.

MOTION FOR PRELIMINARY APPROVAL

While each Settlement Class Member has varying damages, those issues do not create a predominance problem. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668–69 (9th Cir) ("[W]e have held that a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones."); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) ("That some individualized calculations may be necessary does not defeat finding predominance."). Damages can still be calculated on a classwide basis using a set formula or statistical estimations, as was done here. *In re Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d 156, 197–98 (1st Cir. 2009). Indeed, "the use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *Id.* at 197.

For purposes of determining the aggregate award, Class Counsel considered a variety of methodologies to estimate the payments Pekin would have paid had appropriate available-benefits limits been applied. Carey Decl. ¶ 28. Class Counsel relied on several customized statistical models that drew on Kaplan–Meier curves, maximum likelihood estimations of censored claim data (product limit estimators), single and double component Weibull distributions, and mixed models designed to fit case data and other settlement data to the appropriate curves. *Id.* ¶ 29. The results of these efforts were then stratified to reflect policy limits and the date of loss for each claim. *Id.* ¶ 30.

To distribute the aggregate recovery, Class Counsel determined individual allocations for each Settlement Class Member, relying on an expert in economics and statistics, experience in the class action settlement and insurance fields, and the data provided by Defendant. *Id.* ¶ 31. The distribution approach, at a minimum and to account for the length of deprivation of funds, considers the date of the claim, the amount of UM/UIM coverage available, and the relative value of the claim. *Id.* ¶ 32. The Class is entitled to prove its aggregate damages using statistical estimates, and then allocate a share of the recovery to each class member using any reasonable method to determine

20

individual allocations. *See Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 668–69 (individualized damages do not create predominance issue); *In re Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d at 197 (approving use of aggregate damages in class actions). Here, the Class can rely on preexisting data that ascertain relative exposures for each claim, and also a methodology based on date of loss and amount of coverage. Predominance is met in this case.

> **b.    Litigating this case as a class action is superior to individual adjudications.**

This case also meets the requirement that a class action be "superior" to individual adjudications. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Zwicky*, 343 F.R.D. at 118 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Here a class action will reduce litigation costs and promote greater efficiency. Having ninety-four members file individual cases—particularly where the causes of action are basically identical—would increase litigation costs, waste party resources, and waste the Court's resources. *See McClure*, 341 F.R.D. at 254 (finding superiority where "case involves the interpretation of a form contract, the interpretation of which will apply to all class members making class action an efficient form of adjudication"). A class action provides a superior vehicle for resolving their claims.

**B.    The proposed settlement should be preliminarily approved.**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of class action claims. Preliminary approval is appropriate "where the proposed settlement does not disclose grounds to doubt its fairness and lacks 'obvious deficiencies.'" *Zwicky*, 343 F.R.D. at 119–20 (citations omitted). In determining whether a settlement is fair, reasonable, and adequate at the preliminary approval phase, "courts

MOTION FOR PRELIMINARY APPROVAL

need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class and (4) falls within the range of possible approval." *Id.* at 119 (cleaned up). Each of these factors weighs in favor of approving the settlement.

### 1.    The settlement is the result of arm's-length negotiations.

Weighing in favor of preliminary approval, the settlement arises out of informed, arm's length negotiations among counsel for the parties. The parties reached agreement after Class Counsel obtained a ruling from the Arizona Supreme Court in *Franklin* that established that insurance companies must stack UM/UIM coverage where an insurer did not provide the required notice to select coverage. As the Arizona Supreme Court has decided some of the key legal issues in the case, the only outstanding factual issues in this case are whether Pekin provided the required notice under A.R.S. § 20-259.01(H) and, if not, whether Pekin's insureds were paid for stacked coverage. Rather than litigate further, Pekin and Plaintiff engaged in mediation with the Michael N. Ungar—a mediator well versed in insurance claims handling and class action issues—and reached a settlement that benefits both sides.

"Particularly with settlements reached prior to class certification, enough information must exist for the Court to assess 'the strengths and weaknesses of the parties' claims and defenses ... and consider how class members will benefit from settlement' to determine if it is fair and adequate. *Zwicky*, 343 F.R.D. at 120 (citations omitted). "In considering a proposed settlement, a court therefore bears an obligation to first evaluate the scope and effectiveness of the investigation plaintiff's counsel conducted prior to reaching an agreement." *Id.* Even though this case was settled before class certification, the Court can assess the strengths and weaknesses of Plaintiff's claims and Pekin's defenses based on the decision in *Franklin* and the extensive discovery and analysis conducted in anticipation of briefing class certification.

MOTION FOR PRELIMINARY APPROVAL

1    Relying on the ruling in *Franklin*, Plaintiff contends she has a strong case for

2  breach of contract by establishing that Pekin did not provide the required notice under

3  A.R.S. § 20-259.01(H) and that Pekin did not stack coverage. Nothing in Doyle's policy

4  advises her of her right to select coverage, and she did not receive a separate letter from

5  Pekin. While Pekin denies liability, the Arizona Supreme Court held that insurers

6  "seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle

7  policy must employ subsection (H)'s sole prescribed method for limiting stacking."

8  *Franklin*, 532 P.3d at 1146. The court went to describe what is required: "[I]nsurers must

9  (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice

10  requirement informing the insured of their right to select one policy or coverage either in

11  the policy itself or in writing to the insured within thirty days after the insurer is notified

12  of the accident." *Id.* at 1148 (citations omitted). In settling this case, Pekin identified all

13  Settlement Class Members who made a claim for UM/UIM benefits and exhausted the

14  single (unstacked) policy limit under a multi-vehicle policy. Based on Pekin's policy

15  language and claim records, Plaintiff contends she could show, if the case proceeded, that

16  Class Members did not have the required policy language and did not receive notice.

17  Additionally, Plaintiff Doyle can show that Pekin did not stack her coverage. While

18  Pekin denies liability, it again identified all Settlement Class Members who did not

19  receive stacked coverage.

20    Based on this information, the Court should find that the settlement is based on an

21  informed, arm's-length negotiation.

22    **2.    The settlement has no obvious deficiencies.**

23    There are no obvious deficiencies in the proposed settlement. The Ninth Circuit

24  has pointed to three factors as troubling signs of a potential disregard for the class's

25  interests during the course of negotiating and pre-certification settlement: (1) when class

26  "counsel receive a disproportionate distribution of the settlement, or when the class

27  receives no monetary distribution but class counsel are amply rewarded;" (2) "when the

28  parties negotiate a 'clear sailing' arrangement that provides for the payment of attorneys'

fees separate and apart from class funds;" and (3) when the parties arrange for fees not awarded to class counsel to revert to the defendants rather than the class. *In re Bluetooth Headset Prods. Liability Litig.*654 F.3d 935, 947 (9th Cir. 2011); *see also Zwicky*, 343 F.R.D. at 121 (same). None of those deficiencies are present here.

Here, the Settlement Class will receive a majority of the Settlement Fund. In fact, each of the Settlement Class Members will receive a significant recovery. There is no clear sailing provision. Rather, reasonable attorneys' fees will be awarded out of the Settlement Fund as determined by the Court. Last, there is no reversion to Pekin for unclaimed funds. If a Class Member does not claim his or her funds—which is unlikely given the nature of the relief and the robust notice procedures proposed—the Settlement Agreement requires the parties to meet and confer about whether it is financially feasible to redistribute those funds to the remaining Settlement Class Members or select a *cy pres* recipient. Settlement Agreement ¶ 49. And any such decision must be approved by the Court. *Id*. None of the *Bluetooth* deficiencies are present in this case.

### 3. The proposed settlement does not grant preferential treatment to Plaintiff or segments of the Settlement Class.

There is no preferential treatment for Doyle in the proposed settlement. Plaintiff Doyle will request a modest incentive fee of $7,500, which is the standard incentive fee award. *Sonoma Sol LLLP*, 2021 WL 5238711, at *6. "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Zwicky*, 343 F.R.D. at 123 (quoting *Staton*, 327 F.3d at 977). Here, there is only one incentive award, the proposed incentive award constitutes approximately 0.06% of the Settlement Fund. The settlement does not give Plaintiff preferential treatment; in fact, Plaintiff sacrificed what she could have recovered in individual litigation to ensure the entire class was compensated.

There also is not any preferential treatment for segments of the Settlement Class. Each Settlement Class Member's damages will be based entirely on each Class Member's

24

possible damages and the amount of available UM/UIM coverage they had. While the damages among Settlement Class Members will vary, that variation will be due to the varying UM/UIM coverage and possible damages. The proposed settlement is fair to the Settlement Class.

### 4. The settlement falls within the range of possible approval.

To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Zwicky*, 343 F.R.D. at 124 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The Ninth Circuit in particular 'puts a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *B.K. by next friend Tinsley v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 6048315, at *2 (D. Ariz. Oct. 13, 2020) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018).

Class Counsel ran several models to predict the settlement value, and used those models to cross-check the value of this Settlement. Carey Decl. ¶ 33. Class Counsel also took into account the nature of the policies and Class relative to the experience gained in evaluating other cases based on this theory. *Id.* ¶ 34. Counsel has seen various demographics, market niches, and loss estimates, and used that insight to help value these claims. *Id.*

The settlement amount of $12.45 million compares favorably with the projected value of Class Members' UM/UIM claims as calculated under the stacked limit instead of the single limit, constituting 143% of the projected value of the classwide insurance claims. The settlement was the product of an arms-length, non-collusive negotiation. *Supra* section VI.B.1. And given the risks and time associated with continued litigation,

the possibility that the Settlement Class could recover less at trial, and the possibility of an appeal if they do prevail, $12.45 million represents a fair, reasonable, and adequate settlement.

### 5. The experience and views of counsel weigh in favor of preliminary approval.

Class Counsel's judgment that this settlement is fair and reasonable is entitled to significant weight. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted). This is particularly true here where Class Counsel are not only experienced class attorneys, but experts in insurance cases and insurance class actions. *See Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *3 (D. Ariz. July 27, 2018) (giving counsel's recommendations a "presumption of reasonableness," where class counsel had sufficient expertise in class actions and consumer protection cases), *aff'd*, 795 F. App'x 509 (9th Cir. 2019); *see also* Hagens Berman Firm Resume (showing class and insurance experience). Class Counsel's experience and recommendation supports a finding that the settlement is fair, reasonable, and adequate.

### C. The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e)

Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, for a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed plan for disseminating notice provides direct notice to the Settlement Class as required by Rule 23(e)(1)(B). Using the Class Members' contact information from Defendants, notice will be sent via USPS first class mail. Settlement Agreement ¶ 33. If no valid address is available, notice will alternatively be sent by email to Class Members with valid email addresses. *Id.* Given the size and variation among the Class Member's recoveries, Class Counsel also requests approval from the Court to contact the Settlement Class Members directly. Once notice is sent to a prospective class member an "attorney-client relationship exist[s] for the purpose of aiding prospective class members in deciding whether or not to join in the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983), *aff'd in part, vacated in part on other grounds*, 751 F.2d 1193 (11th Cir. 1985). Class Counsel fulfills their responsibility "by providing neutral, objective information and advice" about whether to join or exclude themselves from the class action. *Id.* at 769 n.20. Because this is a small Settlement Class and most of the recoveries will be large, Class Counsel may contact Settlement Class Members to answer any questions about the settlement, to provide neutral information about whether to stay in the Settlement Class, and to provide Settlement Class Members with any requested documents (such as the Complaint, Answer, Motion for Preliminary Approval, or Motion for Attorneys' fees). In contacting the Settlement Class Members, Class Counsel have consulted with ethics counsel about their ethical duties and to ensure compliance with all ethical rules, including Rule 4.2 of the Arizona Rules of Professional Conduct, Communications with Person Represented by Counsel, as some of the Settlement Class Members were previously represented by counsel in relation their individual claims.

The proposed Notice contains all the information required by Rule 23(c)(2)(B) to the Settlement Class, in language that is plain and easy to understand. *See generally* Proposed Notice. The proposed Notice features a prominent headline and is identified as a Notice from the District Court. *Id.* at 1. The Notice includes information about the lawsuit and settlement, including Plaintiff's claims, the definition of the Settlement Class,

the amount of the Settlement, how much each Settlement Class Member will receive from the settlement, the right to object, the right to request exclusion, how to attend the final fairness hearing, contact information for Class Counsel, and the settlement website where Class Members can obtain additional case information. *Id.* ¶¶ 1, 5, 7–10, 12, 14, 16, 20–22. The Notice alerts recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice, visit the settlement website, or contact Class Counsel for additional information. *Id.* at 1.

To assist potential Class members in understanding the information concerning the lawsuit and their rights, Epiq will use a dedicated and case-specific website. *Id.* ¶ 23. Class Members will be able to obtain detailed information about the case and review key documents, including the Consolidated Complaint, the Answer, important court documents, and the Settlement Agreement. *Id.* ¶¶ 1–2, 4, 17, 23. The case website address will be displayed prominently the Notice. *Id.*

Finally, Class Counsel proposes that the deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the settlement be set 60 days after the start of the direct Notice Campaign ("Notice Start Date"), which also follows the recommendations of the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

These notice provisions meet the requirements of Rule 23. They will allow the Settlement Class a full and fair opportunity to review and respond to the proposed settlement.

**D.    Proposed Schedule for Dissemination of Notice and Final Approval**

Plaintiff proposes the following schedule for the dissemination of class notice and final approval:

| Event | Proposed Deadline |
|-------|-------------------|
| Settlement Class Data provided to Epiq | No later than 30 days after entry of preliminary approval order |

MOTION FOR PRELIMINARY APPROVAL

| Notice Start Date | No later than 60 days after entry of preliminary approval order |
|---|---|
| Last day for motion for attorneys' fees, costs, expenses, and service awards | No later than 30 days after the Notice Start Date |
| Last day for objections to settlement | Filed or received 60 days after the Notice Start Date |
| Last day for requests for exclusion from the Settlement Class | Filed or received 60 days after the Notice Start Date |
| Last day to file motion in support of final approval of settlement | 14 days after objection/exclusion deadline |
| Fairness Hearing | 30 days after motion for final approval is filed, unless otherwise ordered by the Court |

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court preliminarily approve the Settlement with Pekin, certify the Settlement Class, appoint Plaintiff Doyle as Settlement Class Representative, appoint Hagens Berman as Class Counsel, and direct notice in the form and manner, and on the schedule, proposed here.

MOTION FOR PRELIMINARY APPROVAL

Dated: November 1, 2024                Respectfully submitted by,

                                       HAGENS BERMAN SOBOL SHAPIRO LLP

                                       By: *s/ Robert B. Carey*
                                           Robert B. Carey
                                           John M. DeStefano

                                       GOLDSTEIN WOODS

                                       By: *s/ Evan Goldstein*
                                           Evan S. Goldstein

                                       GUIDANT LAW PLC

                                       By: *s/ Sam Saks*
                                           Sam Saks

                                       *Attorneys for Plaintiff*

MOTION FOR PRELIMINARY APPROVAL