**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taylor Doyle, | No. CV-22-00638-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Pekin Insurance Company, | |
| Defendant. | |

At issue is Plaintiff Taylor Doyle's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class (Doc. 102, Mot.). After reviewing the Motion and attached documents, the Court will grant the Motion.

## I.    BACKGROUND

In 2021, a Judge in this District ruled that Arizona law requires stacking of uninsured motorist ("UM") or underinsured motorist ("UIM") coverages within a multi-vehicle insurance policy under A.R.S. § 20-259.01(H), where the insurer did not provide the insured an opportunity to elect which vehicle's coverage was applicable to the claim. *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. October 19, 2021). In the wake of that ruling, a number of putative class actions against insurers were filed in this District alleging the same theory of liability.

The first such case was *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT. Two weeks after *Franklin* was filed, Plaintiff filed the present

putative class action case alleging she was injured in an automobile collision that resulted in over $220,000 in bodily injury damages. (Doc. 56, 2d Am. Compl. (SAC) ¶¶ 20–30.) The non-party at fault was insured with bodily injury liability coverage up to $50,000 per injured person, so he was underinsured as to Plaintiff under A.R.S. § 20-259.01(G). (SAC ¶¶ 31–33.) Plaintiff was insured under a policy with Defendant Pekin Insurance Company that provided UIM coverage for each of two vehicles at $100,000 per person and $300,000 per accident. Defendant did not allow her to stack the two vehicles' UIM coverages despite not complying with the notice provision of A.R.S. § 20-259.01(H). (SAC ¶¶ 45–49.)

Meanwhile, in *Franklin*, this Court certified two questions to the Arizona Supreme Court: "(1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?" and "(2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?" *Franklin v. CSAA Gen. Ins. Co.*, No. CV-22-00540-PHX-JJT, 2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022). The Arizona Supreme Court answered:

> (1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1153 (Ariz. 2023).

After the Arizona Supreme Court answered those questions, the parties in the present lawsuit engaged in pre-class certification settlement negotiations and a mediation, through which they reached an agreement to settle this case for $12.45 million. (Mot. at 6.) Plaintiff now moves for certification of the settlement class and preliminary approval of the settlement agreement.

## II.     LEGAL STANDARD

### A.     Class Certification

Federal Rule of Civil Procedure 23(a) provides that a class action—that is, an action in which one or more members of a class sue on behalf of all members of the class—may proceed only if four prerequisites are met:

1. Numerosity: "the class is so numerous that joinder of all members is impracticable";

2. Commonality: "there are questions of law or fact common to the class";

3. Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

4. Adequacy of Representation: "the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

In addition, under Rule 23(b), a court may only certify a class action if there is at least one of the following:

1. Risk of Inconsistency: the prosecution of separate actions by individual class members would create a risk of inconsistent adjudications or adjudications that would be dispositive of non-party class member interests;

2. Appropriate Class-Wide Injunctive Relief: injunctive or declaratory relief is appropriate respecting the class as a whole because the conduct of the opposing party applies generally to the class; or

3. Predominance and Superiority: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Class certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,'" which will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (quoting *Falcon*, 457 U.S. at 161).

## B. Preliminary Approval of Class Action Settlement

Class actions require the approval of the district court before settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

Procedurally, this process moves forward in two steps. The first step is preliminary approval, in which the Court determines whether the proposed settlement class should be certified, as applicable, and the Court conducts a preliminary evaluation to determine if it "will likely be able to" approve the settlement proposal under the "fair, reasonable, and adequate" standard of Rule 23(e)(2) such that it can direct notice under Rule 23(e)(1) to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e); *see also* David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th ed. 2023). The Court looks to several factors to gauge fairness, reasonableness, and adequacy, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). However, some of the eight *Churchill* factors cannot be fully assessed until the final fairness hearing. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

At the preliminary approval stage, courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval. *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009).

The second step is the final approval. "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the court must consider several factors, including whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate." *Id.* When considering whether "the relief provided for the class is adequate," the court should also consider:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3).

*Id.*

At this juncture, the Court need only review the parties' proposed settlement agreement according to the four preliminary approval considerations and conduct a cursory

- 5 -

review of its terms in deciding whether to order the parties to send the proposal to the class members and conduct a final fairness hearing. *See Alberto*, 252 F.R.D. at 665. Because "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be [better], but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

## III.    ANALYSIS

### A.    Class Certification

Under the terms of the settlement agreement, the proposed "Settlement Class" is as follows:

> All persons identified in Exhibit A to the Settlement Agreement and who do not timely elect to be excluded from the Settlement Class, which roughly includes all persons (a) insured under a policy issued by Defendant in Arizona that contained the UM Endorsement or UIM Endorsement and provided UM Coverage or UIM Coverage for more than one motor vehicle; (b) who made a claim for UM Coverage or UIM Coverage during the Class Period; and (c) who (i) received a claim payment equal to the limit of liability for UM or UIM benefits for one vehicle; or (ii) who were one of multiple claimants in a claim related to a single incidence, where the aggregate total paid on the claim was equal to the per incident limit of liability for the UM Coverage or UIM Coverage for one vehicle.

(Mot. Ex. 1, Settlement Agreement ¶ 24 & Ex. A.) The Court now considers whether this proposed class meets the requirements of Rule 23(a) and (b).

### 1.    Rule 23(a)(1)—Numerosity

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015). Impracticability has been interpreted to mean that joinder of all the claims would be difficult and inconvenient. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Although

there is no precise number required to meet this prerequisite, a proposed class of 40 or more members tends to indicate that joinder is impracticable. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."); *Huynh v. Harasz*, 2015 WL 7015567, at *5 (N.D. Cal. 2015) ("As other district courts have noted, 'the numerosity requirement is usually satisfied where the class comprises 40 or more members.'") (quoting *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *3 (N.D. Cal. 2013)). In the present case, the proposed class has 94 members (Mot. at 14), the joinder of which would be impracticable. Accordingly, numerosity is satisfied.

### 2.    Rule 23(a)(2)—Commonality

Under Rule 23(a)(2), a class action must present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have interpreted this section to require a minimum of only one common question of law or fact shared by the class. *Dukes*, 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2), even a single common question will do." (alteration and quotation marks omitted)); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact."). Satisfying Rule 23(a)(2) is a "'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2019 WL 2372447, at *2 (N.D. Cal. 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Plaintiff satisfactorily demonstrates common questions of law and fact through allegations that all members of the proposed class "purchased a Pekin policy in Arizona that included multi-vehicle UM/UIM coverage and the same or substantially the same limitation-of-liability language," and each member requested UM or UIM coverage from Pekin but only received the policy limit for one covered vehicle, even though Pekin did not provide the required notice under A.R.S. § 20-259.01(H). (Mot. at 16.) Moreover, Plaintiff's breach of contract and breach of the duty of good faith and fair dealing causes

of action are identical to those of the rest of the proposed class. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz 2022) ("Plaintiff has satisfied the commonality requirement because each claim is based on a form contract and a uniform course of conduct towards each policyholder."). Lastly, because all the policies at issue are Arizona policies, Arizona law controls and applies to each member. Thus, Plaintiff has satisfied the commonality requirement.

### 3.    Rule 23(a)(3)—Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The named plaintiff's claims and the rest of the class claims need not be identical to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685. If the claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily defeat typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017).

Plaintiff's claims and the class claims are identical, as they all sound in contract and arise out of virtually identical injuries. Plaintiff's claims are therefore typical of the class's claims, and the typicality requirement is met.

### 4.    Rule 23(a)(4)—Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S.

395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). To determine if the named plaintiffs adequately represent the class, courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

No conflict of interest between Plaintiff and the proposed class is apparent here, especially in light of the commonality and typicality requirements being met. *See Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 116 (D. Ariz. 2022) (finding no conflict when commonality and typicality were met, and plaintiffs suffered the same alleged injury as the rest of the proposed class). In addition, Plaintiff's counsel has no conflict with the proposed class members, as counsel has previously litigated related cases and achieved favorable results such that it is also likely to prosecute the present action vigorously on behalf of the class. Plaintiff has shown adequacy.

### 5.    Rule 23(b)

Plaintiff seeks class certification pursuant to Rule 23(b)(3) (Mot. at 18), which provides for class treatment when questions of law or fact common to class members predominate over questions affecting individual members—the predominance requirement—and when a class action is superior to other available methods for the fair and efficient adjudication of the controversy—the superiority requirement. Fed. R. Civ. P. 23(b)(3).

### a.    Predominance

The predominance requirement is more demanding than Rule 23(a)(2)'s commonality requirement. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotations omitted). "[C]ourts have a duty to take a close look at whether

common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (internal quotations omitted). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal citations omitted).

Here, the common issues predominate over the individual issues. Liability in this action is premised on policy forms, standardized letters, and the uniform practices of Defendant. Although the members will have individualized damages, that "does not defeat finding predominance." *Just Film*, 847 F.3d at 1121. Damages here will be calculated on a class-wide basis using a set formula, which is sufficient to satisfy the predominance element. *See McClure*, 341 F.R.D. at 254 (finding predominance where the damages model was "applied on a class-wide basis to calculate damages for each individual policyholder in the class").

### b.    Superiority

To satisfy the requirements of Rule 23(b)(3), Plaintiff must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, a class action will promote efficiency. Because each member's claims involve substantially similar contracts and conduct, filing scores of individual cases would simply increase litigation costs and waste the parties' and the Court's time and resources. Additionally, although damages will vary among the members, many of their claims would potentially be too small to make individual litigation possible. *See McClure*, 341 F.R.D. at

1    254 ("[B]ecause the recoveries of each individual class member will be relatively small, a

2    class action is superior to other methods of adjudication.") Thus, the superiority

3    requirement is met.

4         In sum, the Court finds Plaintiff's proposed settlement class meets the requirements

5    of Rules 23(a) and (b), and the Court will certify the class for settlement purposes.

6         **B.    Preliminary Approval of the Settlement**

7         Having considered in detail Plaintiff's Motion for Preliminary Approval of Class

8    Action Settlement (Mot. at 21–29), including the Settlement Agreement (Mot. Ex. 1) and

9    the Notice of Class Action Settlement (Mot. Ex. 3), the Court finds it will likely be able to

10   approve the proposed settlement agreement under the "fair, reasonable, and adequate"

11   standard of Rule 23(e)(2) such that it can direct notice under Rule 23(e)(1) to all class

12   members of the settlement proposal and set a hearing on the fairness of the settlement.

13   "[T]he proposed settlement appears to be the product of serious, informed, non-collusive

14   negotiations, has no obvious deficiencies, does not improperly grant preferential treatment

15   to class representatives or segments of the class, and falls within the range of possible

16   approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)

17   (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12

18   (E.D. Pa. 2001)).

19        Accordingly,

20        **IT IS HEREBY ORDERED** granting Plaintiff's Unopposed Motion for

21   Preliminary Approval of Class Action Settlement and Certification of the Settlement Class

22   (Doc. 102).

23        **IT IS FURTHER ORDERED** as follows:

24        1.    The Court preliminarily approves the Parties' Settlement Agreement and the

25   Settlement set forth therein as fair, adequate and reasonable, and in the best interest of the

26   putative class members, subject to further consideration at a final fairness hearing (the

27   "Final Fairness Hearing").

28

2.    The Court hereby certifies the following Class for the purposes of settlement (the "Settlement Class"): All persons (a) insured under a policy issued by Defendant in Arizona that contained the UM Endorsement or UIM Endorsement and provided UM Coverage or UIM Coverage for more than one motor vehicle; (b) who made a claim for UM Coverage or UIM Coverage during the Class Period; and (c) who (i) received a claim payment equal to the limit of liability for the UM or UIM benefits for one vehicle, or (ii) who were one of multiple claimants in a claim related to a single incident, where the aggregate total paid on the claim was equal to the per incident limit of liability for the UM Coverage or UIM Coverage for one vehicle, as identified in Exhibit A to the Settlement Agreement.

3.    The Court designates Taylor Doyle as Class Representative for the Settlement Class.

4.    The Court appoints Robert Carey of Hagens Berman Sobol Shapiro LLP as Class Counsel for the Settlement Class.

5.    The Final Fairness Hearing shall be held before this Court on **September 11, 2025, at 9:30 a.m.** (a date no sooner than 90 days following completion of the notice being issued pursuant to 28 U.S.C. § 1711 *et seq.*), before District Judge John J. Tuchi in Courtroom 505, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003, to determine whether to approve certification of the class for settlement purposes; whether the proposed settlement of the Lawsuit on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; whether a final judgment should be entered herein; whether the proposed plan of distribution should be approved; to determine the amount of fees and expenses that should be awarded to Class Counsel; and to determine the amount of the service award that should be provided to the Class Representative. The Court may adjourn the Final Fairness Hearing without further notice to the members of the Settlement Class.

6.    The Court approves the proposed Notice, Exhibit 3 to the Motion for Preliminary Approval (Doc. 102). The Court further finds that the proposed plan of notice and the proposed content of the notice, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

7.    The Court appoints the firm of Epiq Class Action & Claims Solutions, Inc., as the Settlement Administrator. Plaintiff and her designees, including the Settlement Administrator, are authorized to expend funds from the escrow accounts to pay taxes, tax expenses, notice, and administration costs as set forth in the Settlement Agreement. The Court appoints the Settlement Administrator to supervise and administer the notice procedure, as more fully set forth below.

8.    Beginning no later than 30 days following the Settlement Administrator's receipt of final and approved Settlement Class member contact data (the "Notice Date"), the Settlement Administrator shall begin issuing direct notice by first class U.S. mail to all Settlement Class members for whom there is a valid mailing address, whose mailing addresses can be identified with reasonable effort, or alternatively by email, if mailing addresses are not available, substantially in the form attached as Exhibit 3 to the Motion for Preliminary Approval.

9.    All members of the Settlement Class shall be bound by all determinations and judgments in the Lawsuit concerning the settlement, whether favorable or unfavorable to the Settlement Class.

10.    Class Counsel shall file their motion for attorneys' fees, costs, and service award for Class Representative, and all supporting documentation and papers, by 30 days before the deadline for exclusions and objections.

a.    In filing their motion, Class Counsel need not comply with the procedures set forth in LRCiv 54.2(e) and (j).

11. Any person who desires to request exclusion from the Settlement Class shall do so within 60 days of the Notice Date. To be excluded from the settlement, the exclusion request must be received by the Settlement Administrator no later than 60 days after the Notice Date. All persons who submit valid and timely requests for exclusion shall have no rights under the Settlement Agreement, shall not share in the distribution of the settlement funds, and shall not be bound by the final judgment relating to the Defendants entered in the litigation.

12. Any member of the Settlement Class who has not requested to be excluded may enter an appearance in the litigation, at his or her own expense, individually or through counsel of his or her own choice. If the member does not enter an appearance, he or she will be represented by Class Counsel.

13. Any member of the Settlement Class who has not requested to be excluded may appear, object, and show cause, if he or she has any reason, why the proposed settlement should or should not be approved as fair, reasonable, and adequate; why a judgment should or should not be entered thereon; why the plan of distribution should or should not be approved; why attorneys' fees and expenses should or should not be awarded to Class Counsel; or why the service award should or should not be awarded to Class Representatives. All such written objections and supporting papers must be mailed or filed with the Court within 60 days of the Notice Date, with a copy to the Class Counsel, and include:

a. The full name, address, telephone number, and email address of (1) the person objecting (the "Objector") and (2) any counsel for an objector;

b. The name and number of the case: *Taylor Doyle v. Pekin Insurance Company, et al.,* Case No. CV-22-00638-PHX-JJT;

c. Whether the objection applies only the Objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and

d.    The specific the grounds for each objection the Objector is asserting, including a description of the legal authorities and factual basis that support the objection.

14.    All papers in support of the settlement and responses by Class Counsel regarding objections and exclusions shall be filed by **August 29, 2025**.

15.    All reasonable expenses incurred in identifying and notifying members of the Settlement Class, as well as administering the Settlement Fund, shall be paid for as set forth in the Settlement Agreement.

16.    Upon a showing of good cause, the Court may extend any of the deadlines set forth in this Order without further notice to the Settlement Class.

17.    All members of the Settlement Class who have not requested to be excluded are temporarily barred and enjoined from instituting or continuing the prosecution of any action asserting the claims released in the proposed settlement, until the Court enters final judgment with respect to the fairness, reasonableness, and adequacy of the settlement.

18.    Except for proceedings in furtherance of the Settlement Agreement, this Action is stayed pending further order of the Court.

Dated this 23rd day of April, 2025.

Honorable John J. Tuchi
United States District Judge